Okay, our next case is number 18-1663, QFO Labs, Inc. This is a case of the court's decision to vacate the denials in the motions to amend and because the board erred as a matter of law in its claim construction and its legal conclusions of obviousness. The board erred because it equated motion with orientation in the claim construction and in the legal analysis. Although motion and orientation are mathematically related, they're not equivalent. Mimicking motion does not mimic orientation and if I could show you, this is kind of a So let me walk you through the primary reference and the secondary references, the arguments that Parrott was making and what the board ruled on. Primary reference is a joystick controller, Louisville. When you move the joystick on the handle, the craft moves in response to the motion and position of that joystick. But if I take Louisville's entire controller and I turn it sideways, the craft stays in the same position. Why? Because the joystick handle, relative to the base, didn't change. The position didn't change. That's why Louisville is a position-based controller. Well, that's not the only thing they relied on. Exactly. So they went to a series of three secondary references, all of which are early 1990s air mice, where you have a controller and you move it around in the air to move a cursor on the screen. So I'm moving this cursor on the screen by moving my air mouse, okay? But what both Parrott and the board admit is that Louisville, if you have no action on the controller, returns the craft to a flat or normal latitude, it makes the craft go still. Okay? Likewise, for all of these air mice, I'm moving my cursor around, I'm moving my soft robot around on the screen, but if I stop moving, the cursor stops. The robot stops. That's mimicking motion. All right? Now, substitute... You're saying that the real problem is that they just factually didn't understand the references. Yes, Your Honor. And if you look at Substitute Claim 25, in their broadest reasonable interpretation for claiming, they construed orientation very broadly. So we were faced with a choice. What do we do? Do we argue the BRI construction? Do we try and cancel these claims, which would invoke 42.73? Or do we move to amend as is our right under 316D? We chose the latter because we thought we could clarify the BRI construction to make clear with the added language that's in Substitute Claim 25 that the actual orientation of the RC controller. Now... But you conceded that movement and orientation are derivatives of one another, right? I admit that they are derivatives of one another, but let me explain to you why they're different, why they are not equivalent to each other. In an orientation-based control system, if I orient the motion controller tilted forward, the craft mimics that motion. Okay? If I hold that controller still, the craft is still in this motion. It keeps moving. Because the orientation of the craft is mimicking the orientation of the controller. So is your focus on the second prong of the gravitational reference? Sensing the tilt? Yes. Okay, so your real position is that it doesn't sense the tilt with respect to the gravitational reference. Correct. It senses the tilt with respect to a different frame of reference. In Nagamitsu, for example, it may sense inclination with respect to a magnetic reference. But what it is doing with that is it's taking that inclination in the soft robot and it's using it to move the robot. This sounds like an oral argument for the board. I mean, that's not our job. They find the facts. If there's substantial evidence, we affirm. This is the legal conclusion, Your Honor, and I would argue that this panel needs to review this de novo. De novo? Because of the claim construction. On page 129 of the opinion. So you're saying that the board didn't really construe the second aspect, the sensing the tilt aspect. Correct. On page 129. So as I understand your argument is that you at least want us to send it back for the board to assess whether or not assessing the tilt with respect to the magnetic field is the same as assessing the tilt with respect to the gravitational reference. At a minimum, Your Honor, that's what should go back. The other thing that needs to go back is post-SAS, the board had to evaluate SATO as a reference. That was one of the grounds raised by Parrott. The board dispensed with that. Parrott argues. How is that a harm to you when the board didn't assess one of their challenges? Because our position was SATO teaches away. Out of the three references of the Air Mice, SATO is the only one that addressed the problem of what happens when you hold the controller still. You weren't barred from arguing that SATO teaches away, right? That's what I'm arguing, yes. Well, no, but did you argue that to the board? Absolutely, we argued it to the board. They rejected it, right? No. In the 580 patent IPR, the board accepted that argument. The board said that the combination of lethal, SATO. You mean the 520? We're on the 532 and the 590, yes, Your Honor. Are you saying the board refused to even engage with SATO? Yes. Only with respect to original claim aid. If you look in the appendix on pages 126 through 129, the board did not address SATO and what SATO did. SATO, in our opinion, is very critical to this because it's the only reference. In connection with the motion of relief to amend, are you saying that you addressed SATO? Yes, we did, Your Honor. In fact, SATO was raised by Parrott as one of the grounds in response to the motion. Forget about what they raised. I'm asking you, did you raise? Yes, we did, Your Honor. Where did you raise it? We raised SATO in both of the briefs. You'll see the raising there of that argument. SATO teaches a motion-based controller. It's on page 12 of the motion of the brief. If you take a look at... Does this have to do with their saying they weren't allowed to look at your patent owner response? Is that where you primarily raised SATO? When you said one of your complaints here is that the board said you can't incorporate by reference, so therefore we refused to look at the rest of the record. Yes, on 42.6A3. Show us where you argued SATO in connection with the motion for leave to amend. If I could do that on rebuttal, I'll look up and tell you exactly where it is, Your Honor, because it is argued throughout there. If you look at, for example... No, I just want to see where you did it, because you're complaining they didn't address it, and there's no reason for them to address it if you didn't argue it. We did argue it, Your Honors. And I'm trying to find the table in the yellow brief that laid out the arguments, and what you'll see in there is that those arguments actually specifically addressed... If you come before us to argue that the commission failed to address an argument you made, you should be prepared to show us where you made the argument. It is appendix, page 82, the blue brief, page 43. We discuss where we made this argument. The argument is represented in the decision by the board where they went through our argument. I'm not forget about the decision by the board. I'm just asking you first, where, in connection with the motion to amend, did you make this argument? Just show me. Is it on page 82? That's an IPR decision. That's not your argument. That says what the patent owner argued. Is this on the motion for leave to amend? Yes. So, Parrott's position is that you didn't argue that SATO teaches away anything in relating to the combination with Nagamitsu. You only argued it when SATO was part of a combination. And, Your Honor, the board acknowledged that the motion-based controllers were equivalent, and we argued... Why did the board not address SATO? The board did not address SATO with respect to the substitute claims. It only addressed SATO with respect to the original claims. Okay, but where did you argue that SATO was helpful to you in connection with the substitute claims? Your Honor, I will get to you on rebuttal. I apologize for not having that citation at my hand here. But what I would like to do is, if I could, explain why SATO is relevant. SATO, as we argued to the board below, teaches a floating detection means. Why does it teach a floating detection means? Because if a user is holding a controller at a slight angle and holding it still, the accelerometer will sense some aspect of gravity. And SATO realized, and expressly teaches, that that means that the controller might be thinking that it's moving, because there's some sensation on the accelerometer. But it's not. The controller is being held still. It's detecting the force of gravity a little bit. And in order not to confuse that with a motion signal, SATO says, put those accelerometers in a floating detection structure, so that they never have to worry about not being oriented with respect to gravity. And as a result, SATO teaches, in what we argue, it teaches a way because it teaches ignoring gravity. And that's what was argued to the board below. That was addressed by the board with respect to Original Claim 8. It was never addressed by the board with respect to Substitute 125. That's really part of the important question here, is you argued it with respect to Original Claim 8. Did you ever really argue it with respect to the amended claim? Yes, we did, Your Honors. We argued that. When you cite back to your prior patent owner response, and assuming it was error for the board not to consider it, even if you go back to that prior patent owner response, I don't see anything where you discuss it other than with respect to Original Claim 8. We did discuss the fact that that teaching way caught against the combination of those references, because you would not look to a motion-based controller to find a gravitational reference. So in the context of the gravitational reference, we taught that with respect to the amended claim language in Substitute Claim 25. Your Honor, you're rebutted. Do you want to save it? Thank you. Mr. Trotman. Good morning. May it please the Court. I'd like to begin by addressing this discussion of Sado and hopefully clarifying the record for Your Honors. Let me ask you, and this is hypothetically, because I don't know where the Court would come out on this, but it seems to me that using this incorporation by reference to say we're not going to consider the patent owner response is inappropriate. I mean, that regulation on incorporation by reference relates to expert affidavits and exhibits. It's very specific about what you're not supposed to incorporate by reference, and it would seem that refusing to look at the rest of the record is totally inconsistent, not only with AQA products, but with the APA. So assuming that it would have been error not to look at the patent owner response, can you address whether or not you think even looking at the patent owner response there was an actual harmful error? Sure, I'd be happy to. Let me just briefly address your point, Judge O'Malley. So I don't think we agree. I don't think I agree that it's inconsistent with AQA products, the incorporation by reference, and for a simple reason, because the instituted claims are a prior art combination with a different set of prior art. So what's happening with the incorporation by reference? Right, but the APA specifically says you have to consider the entirety of the record as a whole. I understand. My point, though, is those arguments are specific to a combination of three pieces of prior art for the instituted claims that are different prior art than what's presented for the substituted. But they didn't say we're looking at this, we don't find it relevant. They just said we're not going to even look at it. Well, that's not exactly true either, because that's my second point, Your Honor. They said we find this procedurally improper, and then if you look at the board's decisions, they then make substantive determinations in any event. So the point is, even if you find that it was procedurally improper, you still have the board's substantive rationale that you can review for substantial evidence and hopefully affirm. So that's where it would come out on the incorporation by reference. But I also just really want to make clear what's happening here with Sado,  So they moved to amend. We filed an opposition brief. Then they filed a reply brief in response to our opposition brief. And in our opposition brief, we raised two distinct grounds why the substitute claims were invalid. We had one ground involving Sado as a secondary reference, and a second ground involving Nagamitsu as a secondary reference. Now in appendix pages 667 through 676, that's their reply brief where they deal with the Sado combination. Teaching away is explicitly raised there with respect to the Sado combination. But then you move to appendix 677 to 680. That's the part of their reply brief that deals with the Nagamitsu reference. There's not a mention made of teaching away. We pointed that out in our red brief on page 29. Then in their reply brief here before this court, they then cite to pages 681 to 682, which is then section E of their reply brief as, no, yes, we actually did raise Sado. But there's one line, it's the second line of page 682 on the appendix, where teaching away is made as part of a laundry list of incorporation by reference to the patent owner's response. The board explicitly addressed all of those arguments with respect to the instituted claims, and specifically on appendix page 38 and 39, rejected the teaching away arguments with respect to Sado. It's the exact same arguments because all they did in their reply brief on the motion to amend is incorporate, by reference, their earlier arguments. You're saying the earlier arguments only related to instituted claimant? If you look at page 682 of the record, that's their reply brief on the motion to amend. All they did in that page is say, look at our earlier arguments with respect to the instituted claims. That's the only substance of their argument on that page. But if Sado teaches away, does that impact the Nagamitsu reference or not? First of all, the court said it doesn't, found as a matter of fact that it doesn't teach away. The second point, Your Honor, is also correct, that it doesn't affect Nagamitsu because it's a completely different prior art reference. Let me just be clear as to what the board found as a matter of fact with respect to the Sado reference. Sado discloses a number of different embodiments. One embodiment of Sado has this floating detection means. That's just one of a number of options. The board found that at most, Sado would teach away from using these floating detection means. But of course, these floating detection means are not part of our proposed combination. They're not what Nagamitsu teaches. To the contrary, Nagamitsu teaches the exact same sensor system as what's disclosed in the QFO patents. Specifically, and this is figure four of Nagamitsu, that's appendix page 1941, shows it very clearly. It shows three accelerometers arranged in an X, Y, Z arrangement, so orthogonally. It has a little G with an arrow pointing down on it. It's in bubble number 36 on figure four of Nagamitsu. That X, Y, Z sensor arrangement with accelerometers is the exact sensor arrangement that's disclosed in the QFO patents. The board found, as a matter of fact, that Nagamitsu teaches sensing a gravitational reference. It explicitly shows the gravitational reference in that figure. Did they address the second prong of the gravitational reference? In other words, that they sense the tilt with respect to the gravitational reference as opposed to sensing the tilt with respect to the magnetic field? Let me clarify. Those are two different things, right? They did. The difference here is, Your Honor, that actually the Nagamitsu controller is more functional, has more functionality than what's disclosed in the QFO patent. If you look again at figure four, this is very telling. Figure four talks about sensing the sensor with inclining to the left or right, and forward and back. That's what the accelerometers do. The Nagamitsu controller also just rotates. You cannot change the tilt at all. By the way, we certainly think the board was right in finding that tilt and inclination are synonymous with one another. But the Nagamitsu sensor has the additional ability to just rotate it without tilting it. That's where the magnetism function comes in because you're essentially changing the… Did the board ever discuss whether there's any difference in the claim, from the claim that says sensing the tilt with respect to the gravitational reference versus the Nagamitsu teaching that says sensing the tilt with respect to the magnetic field? The board found as a matter of fact that it's not sensing the tilt with respect to the magnetic field. That's not what the board found. The board found as a matter of fact, and that is at appendix page 56 and 127, the board found as a matter of fact that Nagamitsu is sensing the tilt with respect to gravity. Again, it cited figure four and the associated text. The fact that there's this… I'm sorry, what page were you on? It's appendix page 56, Your Honor. I got it. Sorry. Bear with me. Sorry, Your Honor. Were the reasons discussed above? Well, let me find. There's a distinguished, especially to deal with this magnetism point. I think it's an important point for me to discuss, Your Honor. It's on 56. They say Petitioner Patton argues that Nagamitsu teaches a motion-based controller with a magnetic reference, not a gravitational frame of reference, and then they find that that's not the case. Thank you. I'm sorry. I missed it. I had it right in my notes. That's exactly right. So the board is finding as a matter of fact that the tilt feature, the inclination feature of Nagamitsu is based on gravity. And again, there's very clear substantial evidence for that. You need to look no farther than figure four where in the bubble showing the accelerometers, there's a little label G pointing down. A person with skill in the art would understand that to be referring to gravity. And in fact, the board also cited the testimony of QFO's expert, and this is at appendix 53 and 57. He testified gravitational reference means the use of the gravity vector as a component of the reference frame. The term would be understood as the downward direction of Earth. And again, appendix page 1941, when you have the little G written right next to the accelerometers, that's the gravitational reference. And that's what the board found as a matter of fact. And he also, opposing counsel also characterized Nagamitsu as a motion-based controller that is using for a mouse. But that's not what Nagamitsu is. Nagamitsu is controlling a soft robot. And that is not only moving when you're moving the sensor. And column 15 of Nagamitsu, the board relied on a portion of column 15, appendix page 1971, that is also, as a matter of fact, we believe very illustrative. It says the user can manipulate the simulator, that's the soft robot, naturally, as if you were using a joystick of a TV game or a control stick of a helicopter. And when you use a control stick of a helicopter or a joystick on a TV game, as long as you're pushing the joystick to the right, whatever you're controlling is going to move to the right. And similarly, just like it says it's sensing tilt or inclination, as long as you're tilting it to the right, you're going to be moving the controlled object to the right. The board found that as a matter of fact, relying on this portion of Nagamitsu. And then in addition to that, the board also repeatedly cited the testimony of QFO's expert, that motion and orientation are mathematically related to one another. They're derivatives. If you know one, you know the other. So this is all based on an artificial distinction between motion and orientation. They are linked mathematically to one another. The board found that as a matter of fact. And it's well supported by the record where Nagamitsu talks about sensing inclination. He concedes that they're derivatives of each other, but he goes back to this question of how does the tilt get sensed? Right. Well, so we're mixing two different claim limitations here. They added one limitation talking about mimicking the sensed orientation of the controller versus the sensed orientation of the aircraft. And then I believe now you're going back to the other limitation, which is the gravitational reference limitation. So I want to make sure they're distinct because the board made two separate factual findings, both of which are well supported. And with respect to the, again, going back to your question, Judge O'Malley, on the gravitational reference point, that is where the board, again, relied on the disclosure in figure one of the three axis accelerometers with the gravitational reference explicitly noted next to them and relied on also the testimony of QFO's expert that gravitational reference, that's what's referred to in the claim, is the use of a gravity vector as a component of the reference frame. And that's exactly what the board found. As a matter of fact, it's disclosed by Nagamitsu. There was no request for further construction of that term. That's exactly right. As a matter of fact, QFO made no request for further constructions of any terms that it proposed, neither the orientation terms nor the gravitational reference terms. So unless the court has any additional questions, I'll reserve the rest of my time. Okay. Thank you, Mr. Trout. Well, you can reserve it, but I don't know what you're going to do with it. I will waive it. Thank you, Your Honor. Your Honor, in answer to your question, Judge Dyke, Section E, as counsel indicated, is entitled, neither SATO nor Nagamitsu could be combined with LOVL. And we made that argument at page 10 of our reply to their opposition to the motion to amend. Okay, but that's addressing combining SATO, not saying that SATO teaches something that relates to Nagamitsu. That you would not combine SATO with the reference because it teaches away. Okay. So counsel— But why did you put this whole patent owner estoppel thing in your brief? I mean, you can't possibly think that it's right for our consideration right now. I believe that it is, Your Honor. We would have canceled the claims. But for the fact, the patent owner estoppel would then implicate any future IPRs and any future continuations of our case. Well, that's not right until we actually find out if it implicates it, right? We couldn't cancel the claims. So in this IPR, we didn't have a chance to do that. In fact, actually, as Your Honor's opinion in AQUA Products points out, it's impermissible to shift the burden. And yet, 4273d3 shifts the burden. The question that has never been asked— But it's impermissible to shift the burden in connection with assessing the validity of the substitute claims, and the board didn't do that here. The board recited the words that it was not doing it, and yet the reality is, because they found claim on 8, unpatentable, Rule 4273d3 theoretically could apply to original claim 8 and turn that into prior art. But I would point to Judge Dyke's comment in the last hearing that merely because you could combine the two references doesn't mean that you get to the claimed invention. We didn't ask for further claim construction because we made expressly clear that the motion of the craft mimics the motion of the orientation, excuse me, of the craft mimics the orientation of the controller. We made that expressly clear by the motion to amend. The combinations that are proposed do not yield that invention. Okay, thank you very much. We're out of time. Thank both counsel and cases submitted.